UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| T.L., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. |
| | ) | 22-11036-FDS |
| v. | ) | |
| | ) | |
| KILOLO KIJAKAZI, Acting Commissioner, | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION
FOR ORDER REVERSING THE COMMISSIONER'S DECISION AND DEFENDANT'S
MOTION FOR ORDER AFFIRMING THE COMMISSIONER'S DECISION

**SAYLOR, C.J.**

This is an appeal from the final decision of the Commissioner of the Social Security Administration denying an application for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits. Plaintiff T.L. alleges that she became disabled on July 18, 2018, when various impairments rendered her unable to work. She contends that she suffers from a number of conditions, including Bell's palsy, trigeminal neuralgia, asthma, obesity, headaches, and mild carpal tunnel syndrome. She now disputes the Commissioner's decision that she is not "disabled" within the meaning of the Social Security Act.

T.L. has moved to reverse that decision and the Commissioner has moved to affirm it. For the reasons stated below, the motion to reverse will be denied and the Commissioner's motion to affirm will be granted.

I.     **Background**

The following is a summary of the evidence as set forth in the administrative record.

   A.     **T.L.'s Educational and Occupational History**

T.L. was born on June 8, 1996. (Admin. Rec. at 1704). She graduated from high school and completed "about three to four months of college." (*Id.* at 1678). She last worked in 2018 at a call center for four months. (*Id.* at 41, 224, 1686). Before 2018, her most recent employment was at a fast-food restaurant in 2016. (*Id.* at 224, 333).

   B.     **T.L.'s Medical History**

T.L. alleges that she is unable to work due to various physical impairments. (*Id.* at 338). Between October 2017 and October 2019, she visited the Boston Medical Center ("BMC") emergency department multiple times due to facial pain. (*Id.* at 669-1512).

On December 1, 2017, Dr. Michael Perloff, an interventional pain and headache specialist at BMC, prescribed baclofen for facial pain. (*Id.* at 892).

Dr. Brent Silver, a resident at BMC, supervised by Dr. Clotilde Hainline, the neuroimmunology division chief at BMC, began treating T.L. in July 2018. (*Id.* at 356, 430). On September 26, 2018, Dr. Silver noted that T.L. reported experiencing facial pain since October 2017. (*Id.* at 1247). To remedy the pain, Dr. Silver prescribed oxcarbazepine. (*Id.* at 1250).

On December 5, 2018, T.L. saw Dr. Silver again and reported that her facial pain was unabated and now accompanied by neck and right arm pain. (*Id.* at 1347). Dr. Silver prescribed topiramate. (*Id.* at 1349). During that visit, he diagnosed cervical disc disorder with radiculopathy of the mid-cervical region. (*Id.* at 1351).

On February 13, 2019, T.L. reported numbness in her hand despite use of a brace.  (*Id.* at 511).

On March 27, 2019, Dr. Silver provided a medical opinion reporting that T.L. experienced constant facial pain that interfered with her ability to walk, carry objects, speak, and perform mental activities, "given that at any time she can experience severe debilitating pain." (*Id.* at 544).

On May 24, 2019, Dr. Sai Nimmagadda, a state agency medical consultant, performed a physical residual functional capacity ("RFC") assessment based on a review of "all of [T.L.'s] file evidence."  (*Id.* at 17, 81-83).  Dr. Nimmagadda noted that T.L. had no "exertional limitations" and concluded that her "current medical evidence suggest[ed] that this RFC can be sustained for a full 40 hours a week." (*Id.* at 81, 83).

On July 18, 2019, Dr. Perloff attempted a trigeminal nerve block procedure on T.L., but he could not complete the procedure because she did not wish to proceed beyond the initial injection.  (*Id.* at 1455).

On February 13, 2020, T.L. visited Dr. Silver and reported continued facial pain.  (*Id.* at 1640).  To treat the pain, Dr. Silver prescribed gabapentin in addition to the topiramate and baclofen that she was already taking.  (*Id.*).

On May 14, 2020, Dr. Silver completed a physical RFC questionnaire for T.L.  (*Id.* at 1646-50).  He listed her diagnoses as "Possible Trigeminal Neuralgia vs. Atypical Facial pain."  (*Id.* at 1646).  Her symptoms were described as "severe facial pain that is quite frequent and interferes with her ability to work [and] perform activities of daily living." (*Id.*).

On May 15, 2020, T.L. spoke with Dr. Amanda Macone, a neurologist at BMC, over the telephone.  (*Id.* at 1866).  Dr. Macone's notes indicate that T.L.'s "[p]ain is always there in the

background, with exacerbations . . . occurring about 2-3 times a week." (*Id.*). Dr. Macone instructed T.L. to increase her gabapentin and baclofen intake to three times per day. (*Id.* at 1868-69).

On September 4, 2020, T.L. visited Dr. Silver and reported continued facial pain. (*Id.* at 1878). Dr. Silver's notes indicate that he was "worried [she was] not taking the medications properly." (*Id.*). Although T.L. was directed to take topiramate twice per day, she was only taking the drug twice per week. (*Id.*). In addition, she failed to take gabapentin three times per day, instead taking the drug only twice per day. (*Id.*).

T.L. returned to Dr. Silver on April 2, 2021. (*Id.* at 1897). She reported being "content with the control of pain, though it [was] quite disabling." (*Id.*). Although Dr. Silver offered her additional treatments, she rejected them in favor of her "current regimen." (*Id.*).

On August 9, 2021, T.L. visited Dr. Robert McCormick, a resident at BMC, supervised by Dr. Andrew Young, a neurologist at BMC. (*Id.* at 1909). Dr. McCormick doubled T.L.'s daily gabapentin prescription. (*Id.*).

In addition to facial pain, T.L. has been diagnosed with obesity, headaches, and carpal tunnel syndrome. (*Id.* at 1451, 1891).

### C.     Hearing Testimony

T.L. testified by telephone before an administrative law judge during a hearing on January 24, 2022. (*Id.* at 1673-94). She stated that she was unable to work because of facial pain. (*Id.* at 1679). She testified that she experienced a "burning sensation" on the right side of her face every day and that the pain flared up two to three times per week. (*Id.* at 1680-82). She also testified that she suffered from headaches and mild carpal tunnel symptoms. (*Id.* at 1681).

During the hearing, T.L. testified that she quit her most recent job because her pain caused her to "call[] out consistently." (*Id.* at 1685). She stated that she is unable to predict when her severe facial pain will be triggered. (*Id.* at 1688). She also testified that the pain interferes with her concentration. (*Id.*).

The ALJ asked the vocational expert if there were any jobs in the national economy for someone who had the same age, education, and vocational background as T.L. and who could occasionally lift and carry 20 pounds, frequently lift and carry ten pounds, sit, stand, and walk for six hours each in an eight-hour workday, occasionally climb ramps and stairs, never climb ladders, ropes, and scaffolds, and occasionally balance on uneven or slippery surfaces, stoop, kneel, crouch, and crawl, while avoiding exposure to hazards, pulmonary irritants, and loud noise. (*Id.* at 1691). The vocational expert testified that the following jobs existed for such a person: customer service representative, cashier, photocopying machine operator, mail clerk, and ticket seller. (*Id.* at 1692). However, the vocational expert added that no jobs exist for an individual who would be off task for 20% of the workday, absent from work twice per month, or taking unscheduled breaks two to three times per week. (*Id.* at 1692-93).

D.   **Procedural History**

T.L. applied for disability benefits on September 6, 2018, and for Supplemental Security Income on September 16, 2019, alleging that she became disabled on July 18, 2018. (*Id.* at 174-75). An ALJ denied her application on July 1, 2020. (*Id.* at 12-19). After an appeal, this court remanded the ALJ's decision for further administrative proceedings. [*T.L.*] *v. Saul*, 21-10087 (D. Mass. Aug. 3, 2021) (Docket No. 15); *see* 42 U.S.C. § 405(g).

After a second hearing, a new ALJ denied T.L.'s applications on March 3, 2022. (*Id.* at 1654-63). She did not file exceptions to the ALJ's decision, and the Appeals Council did not assume jurisdiction over that decision. Thus, the ALJ's decision became the Acting Commissioner's final decision. *See* 20 C.F.R. § 404.984(d). This appeal followed.

## II.     Analysis

### A.     Standard of Review

Under the Social Security Act, this Court may affirm, modify, or reverse the final decision of the Commissioner, with or without remanding the case for a rehearing. 42 U.S.C. § 405(g). The Commissioner's factual findings, "if supported by substantial evidence, shall be conclusive," *id.*, because "the responsibility for weighing conflicting evidence, where reasonable minds could differ as to the outcome, falls on the Commissioner and his designee, the ALJ." *Seavey v. Barnhart*, 276 F.3d 1, 10 (1st Cir. 2001) (citation omitted); *see Evangelista v. Secretary of Health & Human Servs.*, 826 F.2d 136, 143-44 (1st Cir. 1987). Therefore, "[j]udicial review of a Social Security claim is limited to determining whether the ALJ used the proper legal standards and found facts upon the proper quantum of evidence." *Ward v. Commissioner of Soc. Sec.*, 211 F.3d 652, 655 (1st Cir. 2000).

However, the Court may reverse or remand the ALJ's decision if the ALJ ignored evidence or made legal or factual errors. *See Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) ("The ALJ's findings . . . are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts."); *Moore v. Astrue*, 2013 WL 812486, at *2 (D. Mass. Mar. 2, 2013) ("[I]f the ALJ made a legal or factual error, the Court may reverse or remand such decision . . . ." (citation omitted)). Accordingly, if the "ALJ failed to record consideration of an important piece of evidence that supports [the claimant's] claim and, thereby,

6

left unresolved conflicts in the evidence, [the] Court can not conclude that there is substantial evidence in the record to support the Commissioner's decision." *Nguyen v. Callahan*, 997 F. Supp. 179, 183 (D. Mass. 1998); *see also Crosby v. Heckler*, 638 F. Supp. 383, 385-86 (D. Mass. 1985) ("Failure to provide an adequate basis for the reviewing court to determine whether the administrative decision is based on substantial evidence requires a remand to the ALJ for further explanation."). Questions of law are reviewed de novo. *Seavey*, 276 F.3d at 9.

### B. Standard for Entitlement to DIB and SSI Benefits

The Social Security Act provides disability benefits under two programs: DIB and SSI. "The regulations that govern the two programs are, for today's purposes, equivalent." *Smith v. Berryhill*, 139 S. Ct. 1765, 1772 (2019) (citing *Sims v. Apfel*, 530 U.S. 103, 107 n.2 (2000)).

To qualify for DIB or SSI, the claimant must demonstrate that he or she is "disabled" within the meaning of the Social Security Act. 42 U.S.C. §§ 1382(a)(1), 1382c(a)(3). "Disability" is defined, in relevant part, as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Id.* § 1382c(a)(3)(A). The impairment must be severe enough to prevent the claimant from performing not only past work, but any substantial gainful work existing in the national economy. *Id.* § 1382c(a)(3)(B); 20 C.F.R. § 416.960(c)(1).

The Commissioner uses a sequential five-step process to evaluate whether a claimant is disabled. *See Mills v. Apfel*, 244 F.3d 1, 2 (1st Cir. 2001); 20 C.F.R. § 416.920. Those steps are:

> 1) if the applicant is engaged in substantial gainful work activity, the application is denied; 2) if the applicant does not have, or has not had . . . a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; 4) if the applicant's "residual functional capacity" is such that he or she can still perform past relevant work,

then the application is denied; 5) if the applicant, given his or her residual functional capacity, education, work experience, and age, is unable to do any other work, the application is granted.

*Seavey*, 276 F.3d at 5; *see* 20 C.F.R. § 416.920(a)(4).  "The applicant has the burden of production and proof at the first four steps of the process," and the burden shifts to the Commissioner at step five to "com[e] forward with evidence of specific jobs in the national economy that the applicant can still perform."  *Freeman v. Barnhart*, 274 F.3d 606, 608 (1st Cir. 2001).  At that juncture, the ALJ assesses the claimant's RFC in combination with the vocational factors of the claimant's age, education, and work experience, to determine whether he or she can engage in any kind of substantial gainful work which exists in the national economy.  20 C.F.R. §§ 416.920(g), 416.960(c).

    **C.**    <u>**The Administrative Law Judge's Findings**</u>

In evaluating the evidence, the ALJ followed the established five-step procedure set forth in 20 C.F.R. § 416.920(a)(4).

At step one, the ALJ found that T.L. had "not engaged in substantial gainful activity since July 18, 2018, the alleged onset date."  (Admin. Rec. at 1656).

At step two, the ALJ addressed the severity of T.L.'s impairments.  She concluded that T.L. had the following severe impairments:  Bell's palsy, trigeminal neuralgia, peripheral neuropathy, asthma, obesity, headaches, and mild carpal tunnel syndrome.  (*Id.* at 1657).  Those impairments significantly limited her "ability to perform basic work activities as required by SSR 85-28."  (*Id.*).

At step three, the ALJ found that those severe impairments, or their combination, did not meet or medically equal the severity of the requirements of a listed impairment under 20 C.F.R. Part 404, Subpart P, App'x 1.  (*Id.*).

After consideration of the record, the ALJ concluded that T.L. had the RFC to perform light work, except she could occasionally lift twenty pounds and frequently lift ten pounds; sit, stand, and walk for six hours in an eight-hour workday; occasionally climb ramps and stairs, never climb ladders, ropes, and scaffolds, and occasionally balance on uneven or slippery surfaces, stoop, kneel, crouch, and crawl; and frequently handle objects with her right hand. (*Id.*).  The ALJ also noted that she could not be exposed to hazards, pulmonary irritants, and loud noise. (*Id.*).

In making that finding, the ALJ followed a two-step process. (*Id.*).  First, she considered whether there were underlying medically determinable physical or mental impairments—that is, impairments that could "be shown by medically acceptable clinical or laboratory diagnostic techniques"—that could reasonably be expected to produce T.L.'s pain or other symptoms. (*Id.*). Second, she evaluated the "intensity, persistence, and limiting effects" of those symptoms to determine the extent to which they limited T.L.'s work-related activities. (*Id.*).  Whenever statements about those symptoms were not substantiated by objective medical evidence, the ALJ considered "other evidence in the record" to determine if the symptoms limited T.L.'s ability to do work-related activities. (*Id.* at 1657-58).

The ALJ determined that T.L.'s "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (*Id.* at 1659).  However, the ALJ found that her "statements concerning the intensity, persistence, and limiting effects" of the symptoms were not consistent with the medical evidence and other evidence in the record. (*Id.*).  Specifically, the ALJ found that her allegation of extreme functional limitations was inconsistent with medical evidence indicating no significant neurological deficits, full motor functioning in all extremities, normal range of motion, narrow and steady gait, no ataxia, no trigeminal nerve abnormality,

9

improvement of facial pain with nerve blocks and pharmaceuticals, improvement of wrist pain with a brace, and no asthma-induced limitations. (*Id.* at 1660). Moreover, the ALJ noted that T.L. "did not take pain medications as prescribed." (*Id.*). The ALJ also concluded that she was not significantly impaired because she was able to care for herself, cook, visit friends and family, shop, watch television, use a computer, handle finances, wash dishes, do laundry, read, follow written and verbal instructions well, get along with authority figures, manage stress, and adapt to changes in her routine. (*Id.*)

In making those determinations, the ALJ stated that she did not defer to or give any specific evidentiary weight, including controlling weight, to any prior administrative medical findings or medical opinions. (*Id.*). She found the limitations given by Dr. Nimmagadda concerning environmental demands based on motor neuron disorders and asthma to be "somewhat persuasive." (*Id.*). She found Dr. Silver's 2019 opinion "not persuasive because it [was] too vague and [did] not identify limitation in vocationally-relevant terms." (*Id.* at 1661). She also found Dr. Silver's 2020 opinion "not persuasive because it [was] not supported by an explanation or reference to objective findings." (*Id.*). Overall, she found that T.L. retained the RFC "to perform work activities consistent with the reduced range of light work." (*Id.* at 1662).

At step four, the ALJ determined that T.L. was "capable of performing past relevant work as a customer service representative and counter cashier" under 20 C.F.R. § 416.965. (*Id.*). In arriving at that conclusion, the ALJ relied "on the testimony of the vocational expert" in finding that her limitations do not preclude her from performing past relevant work. (*Id.*)

Even if T.L. were unable to perform past relevant work, the ALJ found that, under the fifth step in the sequential analysis, "there are other jobs that exist in significant numbers in the national economy" that she could also perform given her age, education, work experience, and

RFC.  (*Id.*); *see also* 20 C.F.R. §§ 416.969, 416.969a.  To determine the extent to which her limitations impeded her ability to perform unskilled, light work, the ALJ asked a vocational expert whether jobs existed in the national economy for an individual with her age, education, work experience, and RFC.  (Admin. Rec. at 1663).  The vocational expert testified that a person with her characteristics could work in representative occupations such as photocopy machine operator, ticket seller, and mail clerk.  (*Id.*).  After considering those characteristics, the ALJ concluded that she could successfully adjust "to other work that exists in significant numbers in the national economy."  (*Id.*).

In sum, the ALJ concluded, at step four or, alternatively, step five, that T.L. was not disabled within the meaning of the Social Security Act.  (*Id.*).

### D.     T.L.'s Objections

T.L. raises two main objections to the ALJ's determination that she is not disabled:  (1) the ALJ erred in determining her RFC and (2) at step four, the ALJ erroneously found that she had performed jobs that met the criteria for past relevant work.

#### 1.     T.L.'s Residual Functional Capacity

In assessing a claimant's RFC, an ALJ must first find a "medically determinable impairment that could reasonably be expected to produce [the] symptoms, such as pain."  20 C.F.R. § 416.929(b).  If a claimant meets that threshold, as T.L. did here, the ALJ must next evaluate the extent to which "the intensity and persistence of [the] symptoms, such as pain," limit the individual's "capacity for work."  20 C.F.R. § 416.929(c).  That step requires assessing whether a claimant's statements concerning his symptoms are consistent with objective medical evidence and other evidence.  SSR 16-3p, 2017 WL 5180304, at *2-3 (Oct. 25, 2017).  In addition, because a claimant's symptoms can result in a more severe impairment than what

is reflected by the objective medical evidence alone, the ALJ should consider the following factors to assess the consistency of an individual's statements:

> (1) the claimant's daily activities; (2) the location, duration, frequency and intensity of the individual's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any pain medication; (5) treatment, other than pain medication, the claimant has received for relief; (6) any measures the claimant has used to relieve pain or other symptoms; and (7) other factors concerning the claimant's limitations and restrictions due to pain or other symptoms.

*Id.*; 20 C.F.R. § 416.929(c)(3).

Similarly, in assessing a claimant's statements, an ALJ should not reject subjective allegations of pain solely because they are inconsistent with the medical record. *Pires v. Astrue*, 553 F. Supp. 2d 15, 22-23 (D. Mass. 2008); *see also* SSR 16-3p, 2017 WL 5180304, at *5 ("[W]e will not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual"); *Valiquette v. Astrue*, 498 F. Supp. 2d 424, 433 (D. Mass. 2007) ("[S]ome dissonance between the objective medical assessments and the plaintiff's description of the level of pain he was experiencing . . . merely poses the question of the credibility of his subjective complaints, it does not answer it.").

However, if the ALJ finds that the claimant's testimony concerning her pain is not credible, "the ALJ must make specific findings as to the relevant evidence he considered in determining to disbelieve the [claimant]." *Da Rosa v. Secretary of Health & Human Servs.*, 803 F.2d 24, 26 (1st Cir. 1986); *see also* SSR 16-3p, 2017 WL 5180304, at *10 ("The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be

consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.").

Here, the ALJ found that T.L.'s "statements concerning the intensity, persistence and limiting effects of [her] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." (Admin. Rec. at 1659). T.L. contends that the ALJ erred in evaluating her subjective complaints of pain.

T.L. first asserts that the ALJ failed to mention "medication side effects." (Pl.'s Mem. at 17); *see* 20 C.F.R. § 416.929(c)(3)(iv); SSR 16-3p, 2017 WL 5180304, at *8. She is correct that the ALJ's decision does not address possible medication side effects, but that alone is not cause for remand. Any allegation of medication side effects would not entitle her to relief. The only evidence of deleterious side effects comes from her own statements. At the hearing before the first ALJ on May 19, 2020, she testified that one of the medications she was taking (either gabapentin, topiramate, or baclofen) caused memory loss. (Admin. Rec. at 30, 56). She also made a similar statement in a function report to the Social Security Administration on April 16, 2019. (*Id.* at 271 ("[M]edicine make me forget.")).

T.L.'s testimony is contradicted by substantial evidence in the record. Four days before her May 2020 hearing, she spoke with Dr. Macone over the telephone. (*Id.* at 1866). Following that appointment, Dr. Macone noted that T.L. was apparently "tolerating [gabapentin, topiramate, and baclofen] well, without clear side effects." (*Id*. at 1867). Furthermore, her mental and psychiatric evaluations at her numerous hospital visits did not reveal any memory problems. (*See, e.g.*, *id.* at 441, 1311, 1632, 1635, 1872, 1881, 1885, 1889, 1923, 1930). Her doctors observed that she was alert; oriented to person, place, and date; interactive and attentive; and able to convey her history, speak fluently, and exhibit intact comprehension. (*See, e.g.*, *id.* at

431, 511, 1349, 1356, 1450, 1454, 1523, 1527, 1639, 1863). Thus, if the ALJ erred, that error was harmless, and T.L. is not entitled to remand on that issue. *Ward*, 211 F.3d at 656 ("[R]emand is not essential if it will amount to no more than an empty exercise.") (first citing *Dantran, Inc. v. U.S. Dep't of Lab.*, 171 F.3d 58, 73 (1st Cir. 1999); and then citing *Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998)).

Next, T.L. contends that the ALJ failed to consider the frequency or duration of her episodic pain flares. (Pl.'s Mem. at 17); *see* 20 C.F.R. § 416.929(c)(3)(ii); SSR 16-3p, 2017 WL 5180304, at *7. That claim is inaccurate. In her opinion, the ALJ noted that her pain "can happen randomly 2-3 times per week at a level of 10 out of 10." (Admin. Rec. at 1658). Thus, remand is not warranted on that basis.

T.L. further asserts that the ALJ erroneously relied on activities of daily living to support her RFC finding. (Pl.'s Mem. at 18). That argument is likewise unavailing. The ALJ considered her daily activities among several other factors, including objective medical findings, her failure to take pain medications as prescribed, and Dr. Nimmagadda's RFC assessment. Furthermore, the ALJ's consideration of her "daily activities" was appropriate, as the relevant regulations required the ALJ to do so. 20 C.F.R. § 416.929(c)(3)(i); SSR 16-3p, 2017 WL 5180304, at *7. To be sure, the ability to accomplish certain daily tasks does not equate to performing work that constitutes "substantial gainful activity." 20 C.F.R. § 416.920(a)(4)(i). But given that claimants are, by definition, not working when they apply for benefits, an ALJ must necessarily infer whether a claimant possesses the ability to work from circumstantial evidence, including the claimant's daily activities. *Coskery v. Berryhill*, 892 F.3d 1, 7 (1st Cir. 2018) ("[W]e do not see how it was unreasonable for the ALJ to infer, from what the record showed about [claimant's] ability to engage in . . . daily activities, that [claimant] could perform

light work."). Thus, the ALJ's consideration of T.L.'s activities of daily living was not erroneous.

T.L. next contends that the ALJ erred in evaluating the persuasiveness of medical opinion evidence in determining her RFC. (Pl.'s Mem. at 12). There are three relevant medical opinions: two from Dr. Silver and one from Dr. Nimmagadda.

Dr. Silver provided opinions concerning T.L.'s health on March 27, 2019, and May 14, 2020. (Admin. Rec. at 542-45, 1646-50). Both statements contained similar content and indicated that her facial pain interfered with her ability to walk, carry, speak, concentrate, focus, work, and perform activities of daily living. (Admin. Rec. at 542-45, 1646-50). T.L. asserts that the ALJ did not "adequately articulate the persuasiveness" of Dr. Silver's opinions. (Pl.'s Mem. at 12).

The ALJ found both of Dr. Silver's statements unpersuasive for multiple reasons that were sufficiently described. (Admin. Rec. at 1661). The ALJ noted that Dr. Silver's opinions were, among other things, "not supported by an explanation or reference to objective findings," "inconsistent with the substantial evidence of record and the longitudinal treatment record," "inconsistent with no mental health treatment and lack of mental status exams or neuropsychological evaluations," "inconsistent [with] physical exam findings of no significant neurological deficits, improvement with medications and [T.L.'s] functioning," and "inconsistent with [T.L.'s] testimony." (*Id.*).

T.L. contends that the ALJ used "the correct language to discuss persuasiveness" but employed faulty analysis. (Pl.'s Mem. at 14). Specifically, she argues that there is medical evidence supporting Dr. Silver's opinions and that the ALJ misapplied the factors of supportability and consistency when evaluating his statements. (*Id.* at 14-15); *see* 20 C.F.R.

§ 416.920c(c)(1)-(2).  However, the mere existence of evidence that contradicts the ALJ's conclusion is insufficient to support remand.  Although reasonable minds could disagree over the persuasiveness of Dr. Silver's opinions, the ALJ's determination is supported by substantial evidence.  *Irlanda Ortiz v. Secretary of Health & Hum. Servs.*, 955 F.2d 765 (1st Cir. 1991) ("Although the record arguably could support a different conclusion, we believe there is substantial evidence to support the Secretary's decision . . . .  Thus, we must uphold his decision.") (citing *Rodriguez Pagan v. Secretary of Health & Hum. Servs.*, 819 F.2d 1, 3 (1st Cir. 1987)).  Moreover, one of the many reasons that the ALJ rejected Dr. Silver's opinions was because of their inconsistency with T.L.'s own testimony.  (Admin. Rec. at 1661).  That reason alone would strongly favor upholding the ALJ's finding.

On May 24, 2019, Dr. Nimmagadda provided an RFC assessment for T.L.  (*Id.* at 81-83).  After reviewing "all of [T.L.'s] file evidence," Dr. Nimmagadda found that she had no "exertional limitations" and concluded that her "current medical evidence suggest[ed] that this RFC can be sustained for a full 40 hours a week."  (*Id.* at 81, 83).  The ALJ found Dr. Nimmagadda's RFC assessment "somewhat persuasive."  (*Id.* at 1660).  T.L. asserts, however, that "any reliance on the opinion of Dr. Nimmagadda is erroneous" as the opinion only concerned the period before March 31, 2018, which was, at that time, mistakenly believed to be T.L.'s date last insured.  (Pl.'s Mem. at 15).  She further asserts that even if Dr. Nimmagadda's RFC assessment were relevant it could only relate to her DIB claim, as her SSI application had not yet been submitted at the time of the assessment.  (*Id.* at 15 n.5).

In the report containing Dr. Nimmagadda's RFC analysis, T.L.'s most recent medical evidence was dated May 15, 2019.  (Admin. Rec. at 76).  Thus, Dr. Nimmagadda's review of "all of the file evidence" and opinion based on her "current medical evidence" was not restricted to

the period before March 31, 2018.  (*Id.* at 83).  In fact, Dr. Nimmagadda's RFC assessment specifically lists six different medical evaluations of T.L. performed by BMC between January 13 and March 25, 2019.  (*Id.* at 82).  Accordingly, the ALJ's reliance on Dr. Nimmagadda's RFC assessment is not improper.  Furthermore, T.L.'s assertion that Dr. Nimmagadda's opinion should only apply to her DIB claim is incorrect.  Although Dr. Nimmagadda's RFC assessment predates the SSI application, the report is nevertheless a medical opinion that is relevant to her SSI claim.

      Finally, T.L. asserts that the ALJ's RFC finding did not rely on a medical opinion and therefore is not supported by substantial evidence.  (Pl.'s Mem. at 16-17).  On May 24, 2019, after reviewing "all of the file evidence," Dr. Nimmagadda evaluated her RFC and stated that she had no exertional limitations.  (Admin. Rec. at 81, 83).  The ALJ found that assessment to be "somewhat persuasive," and ultimately found that she was even more functionally limited due to her ongoing health issues.  (*Id.* at 1660).  But the ALJ's determination that she was more severely impaired than Dr. Nimmagadda's RFC assessment indicated does not undermine the ALJ's decision.  *Yearling v. Colvin*, 292 F. Supp. 3d 515, 520 (D. Mass. 2017) ("[T]he ALJ did not commit reversible error in assigning [complainant] a more restrictive RFC.  If the RFC includes greater limitations than those in a physician's assessment, such limitations cannot be used to discount the ALJ's determination."); *Carstens v. Commissioner of Soc. Sec.*, 2013 WL 3245224, at *6 (D.P.R. June 26, 2013) ("The fact that the ALJ gave plaintiff the benefit of the doubt in concluding that plaintiff's physical RFC was more limited than the physicians' RFC assessment should not be used to discount the ALJ's determination.") (citing *Dampeer v. Astrue*, 826 F. Supp. 2d 1073, 1085 (N.D. Ill. 2011)).

Accordingly, the Court finds that the ALJ adequately determined T.L.'s RFC, and remand is not warranted on that basis.

### 2. T.L.'s Past Relevant Work

Finally, T.L. contends that at step four the ALJ erroneously found that she previously held jobs that met the criteria for past relevant work. But even assuming that she is correct that the ALJ erred at step four, the ALJ made alternative findings at step five of the sequential evaluation process, concluding that T.L. could perform "other jobs that exist in significant numbers in the national economy." (Admin. Rec. at 1662). Thus, because the ALJ correctly determined T.L.'s RFC—an element of both the step four and step five inquiries—any mistake made by the ALJ at step four was harmless. *Spalke v. Berryhill*, 2016 WL 10720160, at *14 (D. Mass. May 10, 2016) ("[E]ven if the ALJ erred in finding [claimant's] work as a receptionist qualified as past relevant work, that error would be harmless because the ALJ provided an alternative finding at step five that there were other jobs in the national economy [claimant] could perform."). Accordingly, remand on that basis is inappropriate.

### III. Conclusion

For the foregoing reasons, T.L.'s motion for an order to reverse and remand the final decision of the Commissioner of the Social Security Administration is DENIED, and defendant's motion to affirm the action of the Commissioner is GRANTED.

**So Ordered.**

Dated: January 3, 2024

/s/ F. Dennis Saylor IV  
F. Dennis Saylor IV  
Chief Judge, United States District Court